CHARLES LEESER, Respondent, v. THEDA BOEKHOFF *et al.*, Appellants.

**St. Louis Court of Appeals, December 11, 1888.**

1. **Attachment : EVIDENCE : NOTICE OF TITLE.** The purchaser of a stock of goods from an attachment debtor, prior to the levy, may properly introduce in evidence bills of goods sold to him by the attaching creditors for replenishing the stock, as tending to show that he had taken steps to apprise the public, and especially the attaching creditors, of his title and possession.

2. **Attachment: EVIDENCE : APPRAISEMENT.** An appraisement of value made in an attachment proceeding is not admissible in evidence against one who was not a party to the attachment suit.

3. Personal Property: CHANGE OF POSSESSION. In a question whether there was an open, notorious and unequivocal change of possession of personal property, such as will satisfy the settled interpretation of section 2505, Revised Statutes, if there is no substantial controversy as to the facts and these are not of such a character that different fair-minded men might draw different inferences from them, the question should be determined by the court. But if such facts are divested of their unequivocal character by other material facts and circumstances having an opposite tendency, there is no error in submitting the question to the jury.

4. Attachments: SUCCESSIVE: JOINT TRESPASSERS. Successive wrongfully attaching creditors are not *prima-facie* joint trespassers, but may become such by a concert of action analogous to what would be sufficient to prove a conspiracy. A first levy may be so grossly excessive as to leave room for a fair inference that it was made for the purpose of holding all the property for a second levy in favor of another creditor ; and this fact, with others of similar tendencies, may show such a concert of action as will make the parties joint trespassers.

5. Estoppel: INSUFFICIENT ELEMENTS. The facts that the defendants, attaching creditors, knew that the plaintiff had purchased the attachment debtor's stock of goods, and had sold him goods to replenish the same before their levy, contain no elements of estoppel to bar the defendants from denying the plaintiff's title, or his right to charge them as trespassers.

6. Instructions: COMMENT ON EVIDENCE. It is error to instruct the jury as to what conclusion they ought or ought not to draw from any particular fact in evidence, unless there is a rule of law which ascribes to such fact the conclusion expressed in the instruction.

*Appeal from the St. Louis City Circuit Court.*—HON. GEORGE W. LUBKE, Judge.

REVERSED AND REMANDED.

*Christian & Wind*, for the appellants.

The sale was fraudulent and void as to creditors because not accompanied by delivery and followed by change of possession. R. S. 1879, sec. 2505. The retention of the old sign and license amounted to a declaration

that Mrs. Gruner was still proprietor, thus negativing the idea of delivery and change of possession. *Wright v. McCormick*, 67 Mo. The clerks of the vendor remaining in possession amounts to the same thing as if she were in possession. The sale took place January 30, but there was no attempt at any delivery or change of possession until the second day thereafter, February 1, and that was not a reasonable time in such cases. *Seymour v. O'Keefe*, 44 Conn. 128; *Wright v. McCormick*, 67 Mo. 427. And if a delivery and change of possession had subsequently been made, it could not have availed. *Franklin v. Gummersell*, 9 Mo. App., s. c. 11 Mo. App. The facts that Mrs. Gruner continued to sell in the store; that she helped herself to such groceries as she needed; that she or her boy retained one key to the store and occasionally opened it, while the other key was retained by Fischer, her clerk, who opened and closed the door just as had always been done; that Mrs. Gruner's boy, and Fischer and Priesmeyer, her former clerks, continued to work for Leeser while the old Gruner sign remained up; that the same sign or license containing the name of Mrs. Gruner, as proprietor, were hung up behind the bar; that the name C. Gruner remained on the wagons, and that Leeser drank at the bar and paid for the drinks, all rendered the possession at least equivocal and hence fraudulent and void as to creditors. *Claflin v. Rosenberg*, 42 Mo. 450, and all the foregoing cases cited; *Stewart v. Nelson*, 79 Mo. 524. The purchase of goods from Boekhoff and Haase Fish Co. by Leeser did not tend to show that there had been actual change of possession of Mrs. Gruner's goods to him, hence the evidence of the bills read in evidence by plaintiff against the objections of defendants, was immaterial and should have been excluded, even if properly identified; moreover, the bill of the Haase Fish Co. was not identified. The appraisements were competent and

material evidence in behalf of defendants, and it was error to exclude them. There was no joint trespass. Each creditor acted for himself alone, and each of the three attachments were separate and distinct acts by different parties, having no joint or common interest, and done on different days. There was no evidence to the contrary. Instruction number two, given for plaintiff, ought not to have been given, because it was a comment on the testimony ( and also was not the law ), as it told them that "the fact alone of the sign upon the second story of the building remaining unchanged would not defeat the plaintiff's recovery." Defendants never claimed or relied upon the fact of the sign being up as the sole and only ground for the attachment. This fact was therefore given undue prominence. *Jameson v. Carroll*, 5 Mo. App. 598; *Miller v. Marx*, 20 Mo. App. 369.

*Muench & Cline*, for the respondent.

It is not questioned by appellants that this sale was made in actual good faith. Their sole contention being that it was constructively fraudulent, it was incumbent upon the court, under all the evidence, to have the question as to whether possession was delivered in a reasonable time, regard being had to the situation of the property, and whether such sale was followed by an actual and continued change of possession, to the jury for its determination. "A few and fitful instances of use by the vendor, or temporary acts of ownership, without the consent of the vendee, will not vitiate the sale." Bump on Fraud. Con. ( 1 Ed. ) 209. No court has ever decided that the sole fact of an unchanged sign rendered a sale, otherwise accompanied by change of possession, fraudulent in law. Such a rule could not obtain under our statutes. All the purchaser is required to do under the statute, according to *Claflin v. Rosenberg*, 42 Mo. 434, 449, and *Knoop v. Nelson*

*Distilling Co.*, 26 Mo. App. 311, is to show "some open, notorious or visible act, clearly and unequivocally indicative of delivery and possession, such as taking an invoice, putting up a new sign, or any other reasonable means, which would impart notice to a prudent man that a change had taken place." But the evidence of sales by these defendants to plaintiff was admissible upon an additional ground; that of ratification. It is most satisfactorily shown that both parties had immediate notice of the sale; that they sold their goods to the transferee, and took his money with the amplest knowledge that such goods would be made a part of the stock; and that thereafter, on the advice of their attorney, they made a levy upon the very stock thus replenished. Says Bump, in his excellent work upon Fraudulent Conveyances: "If, with notice of the fraud, either actual or constructive, he (the creditor) makes any agreement upon consideration, confirming the transfer, or any statement or agreement to that effect, upon the faith of which the grantee acts as he would not otherwise do, or under such circumstances that his subsequent assertion of his rights as a creditor, if permitted, would operate as a fraud, he will be held to have confirmed the transfer." The court below was clearly right in excluding the written appraisements made in the attachment suits, causes to which respondent was not a party. We can hardly conceive that appellants are serious in contending that no joint trespass was shown. Not merely did the oral evidence show that the whole establishment in question was levied upon under both justice of the peace attachments, and that the stock of goods was only turned over by the constable to the sheriff after appellant Boekhoff had split up her cause of action, transfering one part thereof to the circuit court; but the returns of the several officers, introduced by appellants themselves, render the proof of this allegation of joint

trespass absolutely conclusive.    With respect to appel-
lants' complaint that respondent's *instruction number
two* apparently comments upon a particular fact in the
case, to the exclusion of others, we suggest that this may
appear so, but merely at first blush.    The one fact that
the sign remained unchanged was admitted on all sides.
Taking the respondent's view the court below instructed
the jury that as a matter of law, the unchanged sign .
alone was not sufficient to render the sale conclusively
void ; that the jury should take this fact, however, in
connection with all other facts, in solving the problem
of sufficient or insufficient change of possession.    It
being the province of the court to determine the legal
effect of evidence ( Thompson on Charg.    Jury, 71 ;
*Harris v. Woody*, 9 Mo. 115 ), as well as to direct the
jury that they may consider certain evidence as tending
to prove a certain fact (Thompson, *supra ; Beattie v.
Hill*, 60 Mo. 72-79 ), it was not only proper, but neces-
sary, for the court in this case to direct the jury as to
the legal effect of the one admitted fact which it had
been appellants' effort to make the pivotal one in the
case.    *Calhoun v. Walsh*, 7 Mo. App. 589.    In all the
cases cited by appellants, under this head, as well as
those akin thereto, it will be found that the facts
"singled out" by the *nisi-prius* courts were contested
facts, hence the error.

THOMPSON, J., delivered the opinion of the court. .
This action is brought against two defendants for a
joint trespass upon and conversion of a stock of
goods and other personal property alleged to belong to
the plaintiff.    The answer, after a general denial, set up
in successive paragraphs that the property was levied
upon by the defendants under successive writs of
attachment issued against their debtor, Caroline Gru-
ner, who was the owner of the goods levied upon ; that
prior to the levies Mrs. Gruner had made a pretended

sale of them to the plaintiff with intent to hinder, delay and defraud the defendants and her other creditors, and that the plaintiff was not in the possession of them when levied on. On motion of the plaintiff, much of the matter contained in the answer was stricken out, to which ruling exceptions were taken; but as the defendants do not assign this ruling for error, we need not allude to it further. The substantial issues at the trial were, whether there had been a *bona-fide* transfer of the property in controversy by Mrs. Gruner to the plaintiff, prior to the levies, and whether there had been, prior to the levies, an open, notorious and unequivocal change of possession such as satisfies the interpretation placed by our supreme court upon the first clause of Revised Statutes, section 2505. A question of estoppel arises out of the evidence, and also a question as to certain declarations of law given by the trial court, which will be referred to hereafter.

The evidence tended to show that Mrs. Gruner kept a retail grocery in the city of St. Louis; that the plaintiff was her brother; that the plaintiff owned the building in which the grocery was kept by Mrs. Gruner; that he had loaned her money and had indulged her in the payment of rents, until she was indebted to him, exclusive of interest, in the sum of fourteen hundred dollars; that, finding that she was losing money and could not longer carry on the business, it was determined to turn the property over to him in payment of this debt; that, the value of this property being about one thousand dollars, a bill of sale was made by Mrs. Gruner to the plaintiff on the thirtieth of January, 1887; that, on the second of February, the plaintiff took possession, by placing in charge of the business as his representative a man named Rasche, whom he had employed for that purpose, and who had not previously been in the employ of Mrs. Gruner; that Rasche remained in charge of the

store and business during the daytime ; that Mrs. Gru-
ner continued to reside in the rooms above the store, as
she had done before ; that the previous employes of Mrs.
Gruner, a man named Fisher and a boy who lived with
Mrs. Gruner, continued to be employed in and about
the store as before, but that one of her employes named
Priesmeyer was, on the second of February, when the
plaintiff took possession, discharged by the plaintiff,
according to his testimony, but, according to the testi-
mony of Priesmeyer, quit of his own accord ; that there
were two keys to the store, one of which was retained by
Fisher, for the reason that he lived near by, and the
other by Mrs. Gruner ; that Fisher would generally open
the store in the morning, but that, when he would not
arrive in time, Mrs. Gruner would do it ; that the
moneys collected during the day by Rasche were turned
over by him to Mrs. Gruner to be kept by her over night,
for the reason that there was no safe in the store; and
that she would return them to Rasche in the morning ;
that Mrs. Gruner continued to take from the stock of
goods in the store such groceries as she needed for her
own use, as she had done before ; that she sometimes
went down and assisted in the store when the others
were not there ; that the plaintiff, who kept a black-
smith-shop near by, would come into the store in the
evening from his blacksmith-shop to look after things ;
that for some years there had been above the door of
the store a sign in large letters, "Gruner's Grocery";
that this sign was not taken down or changed until
after the levy of the first two attachments in question ;
that the reason given by the plaintiff for the failure to
change the sign was that he had employed a painter to
do it, who had failed to do it on account of the incle-
mency of the weather ; that Mrs. Gruner had used two
wagons in carrying on her trade, on which were painted
her name, "C. Gruner;" that the wagons were used in
the business without this name being removed from

them until after the attachments were levied; that, after the attachments were levied, the sign was taken down by some unknown person, and the name "C. Gruner" on the wagons was obliterated by axle grease, likewise by some person unknown; that there was a bar run in connection with the grocery, and that the licenses for the same were not changed until after the levy of the first two attachments, when the federal license was changed to the name of the plaintiff. It also appeared, without contradiction, that both of the defendants were apprised of the transfer from Mrs. Gruner to the plaintiff about the time when the plaintiff took possession. Thereafter, both of the defendants sold goods to the plaintiff for cash and billed them to him in his name, with the knowledge that they were to go to replenish the stock which had hitherto belonged to Mrs. Gruner. This substantially was the state of things which existed between the second of February, when the plaintiff assumed to take possession under the bill of sale made three days before, to the twenty-third of February, when the first attachment, that of the defendant Boekhoff, was levied. This was followed by the levy of a second attachment on the twenty-fourth of February, sued out by the defendant the Haase Fish Company. These attachments were sued out by these creditors before the same justice of the peace, and were levied by the same constable. Both of the creditors were represented by the same attorney. The first attachment, that of the defendant Boekhoff, was sued out for a debt of $108.46, and was levied by taking possession of the entire stock of goods, and also the horses, harnesses and wagons,— a levy which we may characterize, in the light of the evidence, as grossly excessive. The next attachment, that of the defendant the Haase Fish Company, was for the sum of forty-one dollars, and was levied on the twenty-fourth of February, on the same property which had been levied upon by the same constable under the

previous writ. In his return describing this second levy, the constable makes no mention of the first. Discovering that, at the time when a portion of her indebtedness was created, Mrs. Gruner was a married woman, the defendant Boekhoff separated her demand, and brought a separate action in the circuit court to charge the property of Mrs. Gruner, for her debt, to the extent of $101.63, and, upon this demand, on the twenty-eighth of February, sued out a third attachment in the circuit court, and caused it to be levied on the same day by the sheriff upon the same property embraced in the preceding levies. The sheriff, in his return, described this levy as having been made, "subject to a levy made by Constable James McGovern," the constable who made the previous levies. Thereafter, on the first of March, the constable released, according to the sheriff's return, his levy on the stock of goods and other articles, and the sheriff took entire possession of them by order of Mrs. Boekhoff's attorney. On the other hand, the sheriff released the levy on the horses, wagon and harness. On the seventeenth day of March the property thus retained by the sheriff, namely the stock of goods, was removed to an auction-house and sold for $316.36, the sheriff deducting nearly half of this sum, to-wit, $150.93, for his costs and expenses, and holding the remainder, namely, $165.43, subject to the order of the court. It also appeared from the evidence that the horses and wagons were sold by the constable, the sale realizing the sum of one hundred and eighty dollars.

I. It is unnecessary to do more than to say that we overrule the assignment of error, that the court erred in admitting in evidence the bills for goods sold by the defendants Boekhoff and the Haase Fish Company to the plaintiff. If they were not sufficiently identified when offered, this was cured by subsequent testimony, and they were relevant as tending to show that, after taking possession, the plaintiff had taken steps to apprise the

public, and especially these defendants, of his title and possession.

II.   Upon the question of value, the appraisements made under the attachments were offered in evidence and rejected by the court.   This was right, for the reason that the plaintiff was not a party to the attachment suits, and hence the appraisements were not competent for the purpose of affecting his rights.

III.   The next assignment of error is that the court should have withdrawn the case from the jury.   We have already recited the substantial facts showing the extent to which the change of possession was open, notorious and unequivocal, within the meaning of the statute.   Certainly, several acts of possession were done by the plaintiff, of an unequivocal character.   He took possession by his own agent, who had not previously been in the employ of his vendor.   He also began the purchase of goods in his own name, having the goods billed to him and hanging the bills on a hook openly in the store, and also informed them that he had succeeded to the business.   The fact that he did not do the other things which he might have done, change the sign, the name on the wagons, and the revenue licenses, and the other circumstances of an equivocal character already detailed, were matters for the consideration of the jury, but were not of such a character that we can separate them from the things which were done, tending to apprise the community of the change of possession which the statute requires.   Undoubtedly, where there is no substantial controversy as to the facts, and where they are unequivocal in their import—not of such a character that different fair-minded men might draw different inferences from them,—the question whether there has been such a change of possession as satisfies the statute is to be declared by the court.   *Knoop v. Distilling Co.*, 26 Mo. App. 303 ; *Wright v. McCormick*, 67 Mo. 426 ; *Stewart v. Nelson*, 79 Mo. 524.   But, while

it may be conceded that this case lies near the border line, its facts. do not seem to be of that unequivocal character presented by the facts of the cases just cited. We are therefore of the opinion that the court rightly refused to withdraw the case from the jury on this ground.

IV.   It is urged that there was no evidence tending to show a joint trespass.    It may be conceded that successive attaching creditors are not, *prima facie*, joint trespassers ( *Brewster v. Gauss*, 37 Mo. 518); but it is equally clear that they may proceed by such a concert of action as will make them such, where they seize the goods of a stranger.   The general rule is that all who direct the commission of a trespass, or wrongfully contribute to its commission, or assent to it after it is committed, are equally liable to the injured person.  *Canifax v. Chapman*, 7 Mo. 175; *Allred v. Bray*, 41 Mo. 484; *McMannus v. Lee*, 43 Mo. 206; *Holliday v. Jackson*, 21 Mo. App. 660, 667; *Cooper v. Johnson*, 81 Mo. 483, 489.   And it is quite unnecessary, in order to charge a defendant in an action for a trespass, that he should have physically participated in the act of seizing and removing.   *McNeely v. Hunton*, 30 Mo. 332.   The evidence required to prove a joint trespass is analogous to that required to prove a conspiracy.   The conduct of all the actors must be considered together, and what was done by each is characterized more or less by what was done by the others.   We are of opinion that there was in this case sufficient evidence of concert of action to take to the jury the question whether the defendants acted jointly in directing the seizures which were made and in the subsequent proceedings.   It is true that the first two levies were not made on the same day.   One defendant, on the twenty-third of February, levies upon the entire property, goods, horses, wagons and harness, for her debt of a little over one hundred dollars.   On the following

day the other defendant, acting through the same attorney and the same constable, also levies upon the entire property, without referring to the previous levy, for a debt slightly exceeding forty dollars. The first levy was so grossly excessive as to leave room for a fair inference on the part of the jury, in view of the second levy, that it was made for the purpose of holding the entire property until the second levy could be made ; otherwise the defendant first attaching would probably have seized merely sufficient to satisfy her own debt. Then the second defendant, coming in after this levy and seizing the whole property, may fairly be deemed to have put itself in the position of ratifying and approving what the previous defendant had done. Then the defendant first levying separates her demand and brings an action for a part of it in the circuit court, under which a third levy is made by the sheriff, likewise on the entire property, but subject to the previous levies. After this, there is an amicable division of the property thus seized, between the two attaching creditors, and each one sells a part, and the whole is swept away ; and finally, when they are jointly sued for the trespass, they file a joint answer and make a joint defense. Now, for the purpose of the inquiry whether this is a joint or several action let us divest our minds of the conception that these parties are acting by means of legal process to secure their rights, and place them on the footing of mere wrongdoers, seizing the goods of a stranger ; and how does the case stand ? Wrongdoer number one, proceeding by two agents, each agent having a different role to perform, seizes a mass of personal property belonging to an innocent owner. Wrongdoer number two, proceeding by the very same agents, comes in and fastens hold of the same property on the next day. These two wrongdoers hold it for a time, and then amicably divide it, and each converts to his several use the portion he receives in the amicable

division. Is this not evidence of joint action? We think that there can be but one answer to this question. The circumstance that there was not an absolute unity of seizure in point of time counts for nothing, where all the circumstances show such a general concert of action. It is sufficient for us to say that we see in these circumstances sufficient evidence to go to the jury on this question; and the court submitted it to the jury on an instruction which seems good enough.

V. A question of estoppel is raised by the plaintiff and predicated upon the fact, shown by the testimony without contradiction, that each of the defendants knew of the transfer to the plaintiff about the time when he took possession, and that thereafter they sold him goods for cash, billing them to him in his name, and knowing that they were to go into the store formerly owned by their debtor, Mrs. Gruner, to replenish the old stock. The claim of estoppel is partly predicated upon the further assertion that some of these very goods, thus sold to the plaintiff for cash, were among the goods afterwards levied upon by the defendants, under their attachments, as the goods of Mrs. Gruner. But there is no substantial evidence that this was the case. Mr. Rasche testifies that such was his "impression." But the impressions of a witness are not substantial evidence where the fact is one which, from its nature, is easily susceptible of proof. We are of opinion that, if such were the fact, it would nevertheless not create an estoppel against the defendants from showing that the other goods were in fact the goods of their debtor, Mrs. Gruner, and not the goods of the plaintiff. It would merely make them trespassers to the extent of their levy upon these particular goods, and not then if it should appear that the plaintiff had wrongfully mingled them with the goods of Mrs. Gruner so that their identity had become lost. Estoppels *in pais* are predicated upon the fact of one party,

by his silence or by his conduct, inducing another party to take a course of action in the belief of a fact being true which is not true ; in which case the party so inducing the other to act is prohibited from afterwards setting up the truth of the fact to defeat the rights of the other party, since it would work a fraud upon him so to do. But there seems to be no such element in this case. There is nothing tending to show that the plaintiff failed to change the sign or the lettering on the wagons, or to take any other steps to render the fact of the transfer to him more unequivocal and notorious, because of the fact that the defendants, after the transfer had been made, sold goods to him for cash.

A more serious question arises on instruction number two, given by the court on behalf of plaintiff, which, it seems, must necessarily lead to the reversal of this judgment.

The instruction says : " The court further instructs you that if you find the facts called for by the preceding instruction and also believe from the evidence that, within a reasonable time after the execution of the bill of sale read in evidence, regard being had to the situation of the property therein conveyed, the plaintiff took actual, open, notorious and unequivocal possession of said property, and as called for in the instruction given for defendant, and thereafter continued in such possession to the date of the levy in question, then your verdict should be for the plaintiff. And, in this connection, the court further instructs you that the fact alone of the sign upon the second story of the building remaining unchanged will not defeat the plaintiff's recovery herein, provided his possession otherwise was open, notorious, continuous and unequivocal, and such as to apprise the community, or those accustomed to deal with the former owner, of the fact that a change had taken place, and to preclude the hazard of Mrs. Gruner

deriving any false credit from the continuance of an apparent ownership.''

This kind of an instruction has been condemned by numerous decisions, both in this state and elsewhere. It is objectionable as being an argumentative instruction and a comment on the evidence. As a general rule, it is improper for the court to tell the jury what conclusions of fact they ought or ought not to draw from a particular fact, unless there is a rule of law which ascribes the conclusion expressed in the instruction of the court. *Chouquette v. Barada,* 28 Mo. 491; *Anderson v. Kincheloe,* 30 Mo. 520; *Fine v. St. Louis Public Schools,* 39 Mo. 59, 67; *Rose v. Spies,* 44 Mo. 20; *Jones v. Jones,* 57 Mo. 138; *Hopper v. Vance,* 27 Mo. App. 336, 341. A commentary by the judge, in his instructions to the jury, upon a particular fact in evidence is equally vicious, whether its tendency be to give them an exaggerated estimate of the evidentiary value of such fact, or, as in this case, to minimize its importance. In instructing the jury, the judge should leave them free to weigh all the facts in evidence bearing upon the issue, in the scales of their judgment, without restricting the freedom of their judgment by throwing into the scales his own opinion as to the probative value of a particular fact or collection of facts. Of course, this rule has no effect in cases where the law itself ascribes a particular conclusion, or raises a particular presumption, from a certain fact or state of facts,—instances of which need not be gone into here.

For the error of giving this instruction the judgment will be reversed and the cause remanded. All the judges concur.