FIRST NATIONAL BANK OF MCPHERSON, KANSAS, Respondent, v. GEO. R. BARSE LIVE STOCK COMMISSION COMPANY, Appellant.

Kansas City Court of Appeals, February 4, 1895.

1. **Agistment: KANSAS STATUTE.** A statute of Kansas gives a lien to the agister of cattle, but the voluntary delivery of such cattle to the owner is an abandonment of the lien which is made to depend on possession.

2. ———: COMMON LAW.  An agister of cattle under the common law had no lien.

3. ———: DELIVERY OF POSSESSION: INSTRUCTION.  An instruction set out in the opinion relating to the delivery of possession by an agister of cattle to the owner is *held*, to be fatally defective in singling out certain facts and advising the jury they were of paramount importance and conclusive in the case.

4. ———: ASSIGNMENT OF LIEN.  The lien of an agister of cattle is assignable since the action would survive and pass to the personal representative.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED AND REMANDED.

*Haff & Van Valkenburgh* for appellant.

(1) An agistor's lien under the statutes of Kansas, introduced in evidence, depends upon possession. *Case, Adm'r, v. Allen,* 21 Kan. 217; *Mfg. Co. v. Morgan,* 12 Neb. 66, at p. 68; *Perkins v. Boardman,* 14 Gray, 481; *Vinal v. Spofford,* 139 Mass. 126; *Papineau v. Wentworth,* 136 Mass. 543; *McDougall v. Capron,* 95 N. C. 292; *McFarland v. Wheeler,* 26 Wend. 467; *Bailey v. Quint,* 22 Vt. 474; 1 Jones on Liens [1 Ed.], paragraph 997; *Vinal v. Spofford,* 139 Mass. 126. (2) An agistor's lien is, therefore, not assignable.  1 Jones on Liens [1 Ed.], paragraphs 982, 990; *Roberts v. Fowler,* 3 E. D. Smith, 635; *Tewksbury v. Bronson,* 48 Wis. 581; *Caldwell v. Lawrence,* 10 Wis. 273 or 331; *Pearsons v. Tincker,* 36 Me. 384; *Ruggles v. Walker,* 34 Vt. 468; *Railroad v. Fackney,* 78 Ill. 116. (3) In any event, the lien which Wilhoit might have originally claimed was waived. *Case, Adm'r, v. Allen, supra; Mfg. Co. v. Morgan, supra; Perkins v. Boardman, supra; Vinal v. Spofford, supra; Papineau v. Wentworth, supra; McDougall v. Capron, supra; McFarland v.*

*Wheeler, supra; Bailey v. Quint, supra;* Jones on Liens, *supra.* (4) The court erred in giving instructions 1, 2, 3, 4 and 5, asked by respondent, for the reason that they are in conflict with the principles of law hereinbefore set forth.

*Karnes, Holmes & Krauthoff* for respondent.

(1) An agistor's lien did not exist at common law and is purely statutory. In this case it is created by section 3664 of the Kansas statute, and exists independently of possession with the provision contained in section 3672 that the lien may be abandoned by "voluntary delivery to the owner or claimant" of the property. 1 Jones on Liens, secs. 641, 104, and such a statutory lien is assignable. 1 Jones on Liens, sec. 990. His cause of action for money had and received was then complete and assignable. *Snyder v. Railroad,* 86 Mo. 613; *Doering v. Kenamore,* 86 Mo. 588; *Ins. Co. v. Smith,* 117 Mo. 261. It is next contended that Wilhoit waived or abandoned his lien. Again, Wilhoit never delivered the cattle to the owner. In other words, in the absence of any actual knowledge or constructive notice on the part of Wilhoit of any claim on the part of the Commission Company, he had a perfect right to have the cattle consigned to them and sold by them as commission merchants. This would create the relation of bailor and bailee, and a bailee can not dispute the title of his bailor. *Sherwood v. Neal,* 41 Mo. App. 416, 424; *Pulliam v. Burlingame,* 81 Mo. 111, 116; *Cole v. Railroad,* 21 Mo. App. 443, 449; *Dougherty v. Chapman,* 29 Mo. App. 233, 241; Bigelow on Estoppel [4 Ed.], p. 490. Again, "Abandonment includes both the intention to abandon and the external act by which the intention is carried into effect. *Hickman v. Link,* 116 Mo. 123, 127; *State ex rel. v. Thompson,* 120 Mo.

12.   (3) "To constitute a waiver, there must be an intentional relinquishment of a known right;" Jones on Liens, sec. 579; *Bank v. Meyer*, 56 Ark. 499; Jones on Liens, sec. 999; *Beall v. White*, 94 U. S. 382, 386; *Muench v. Bank*, 11 Mo. App. 450; *Case v. Allen*, 21 Kas. 217; *Mfg. Co. v. Morgan*, 12 Neb. 67; *Perkins v. Boardman*, 14 Gray, 481; *Vinal v. Spofford*, 139 Mass. 126.

GILL, J.—In February, 1893, G. W. Campbell and J. M. Wilhoit entered into an agreement whereby said Wilhoit was to take eighty-five cattle, belonging to Campbell, to his (Wilhoit's) farm, near Windom, Kansas, there to graze and feed them for five months.  As compensation, Wilhoit was to be paid three and one half cents per pound for the added weight and half a cent per pound on their weight at the time he took the cattle. At the end of five months, Wilhoit was to deliver the cattle at the scales at Windom, Kansas, where Campbell was to receive, weigh them, and pay for the feeding.  At the appointed time (July, 1893), Campbell appeared at Wilhoit's farm near Windom, and on account of the lateness of the hour and desire to ship the steers to Kansas City the next day, the parties agreed to have the stock weighed at the stock yards, at Kansas City, where they were to be shipped, in place of Windom. At this point there was a conflict in the evidence. According to defendant's evidence, Wilhoit gave Campbell possession of the stock at Windom, trusting that when they were weighed and sold at Kansas City, Campbell would settle with Wilhoit for the feeding; but the plaintiff's testimony tended to prove that the cattle were not delivered to Campbell at Windom, but the possession was retained by Wilhoit till they arrived at Kansas City.  All agree, however, that the cattle were put aboard the cars at Windom and shipped by rail to

Kansas City, consigned to George R. Barse Commission Company.

Wilhoit shipped a carload of his own cattle to Kansas City, at the same time and on the same train— he and Campbell going along with them.   On the arrival of the stock at the Kansas City Stock Yards, the Barse company took charge thereof and sold the same; and  when sold, Wilhoit demanded  from the Barse company the payment of his feed bill, which amounted to the sum of $1,144, out of the proceeds of the sale, but the defendant refused to pay anything, claiming the entire amount in partial satisfaction of a claim it held against the cattle, by reason of an alleged chattel mortgage executed by Campbell.   It seem that Campbell purchased the steers on the day he placed them with Wilhoit and borrowed from the Barse company the amount paid therefor, and attempted to make to it a chattel mortgage, but which was in fact neither acknowledged nor recorded, as our statute requires. The cattle failed to bring enough to pay the amount Campbell owed the Barse company.   After the cattle were sold and the Barse company had declined to pay Wilhoit's feed bill, Wilhoit, for value, assigned his claim against the defendant, to the plaintiff bank. Thereupon said plaintiff brought this suit, as for money had and received.

The issues were tried by jury, resulting in a finding and judgment for plaintiff in the sum of $1,170.16, and defendant appealed.

As will be seen, this is a contest between an agistor and an alleged mortgagee, as to who has the superior claim to the money arising from the sale of certain cattle. The transactions occurred in the state of Kansas, and the rights of the parties must be settled by the laws of that state, in so far as they have been shown.

Several sections of the Kansas statutes relating to

liens were admitted in evidence.   By section 3664, it is declared, that all persons engaged in feeding cattle and other live stock, "shall have a lien upon such property for the feed and care bestowed," and, in default of payment, such stock may be sold as provided for in the act. This section of the Kansas statute forms the legal basis for Wilhoit's claim on the cattle in question, and there can be no doubt as to his right to a lien, unless it was abandoned or lost by some act of his.   And whether or not plaintiff's assignor Wilhoit did waive or abandon his lien, is the turning point in this contro-versy.   Defendant claims that such lien was lost, and rests its contention on another section of the Kansas statute, found in the same chapter from which is taken section 3664 above noted.   It reads as follows: "Sec. 3672.   Abandonment.   The voluntary delivery to the owner or claimant of any personal property by any person claiming a lien thereon, as provided in this act, shall be held to be an abandonment of such lien, and such lien may also be waived by special contract."   We have in the case at hand the matter of a statutory lien or nothing.   An agistor of cattle, under the common law, had no lien.   Jones on Liens, sec. 641.   We can then shut out much of the discussion in the briefs and confine ourselves to the rights of these parties under the foregoing statute.

It is clear that the continuance of the agistor's lien, under the Kansas law, is made to depend on pos-session.   The admitted facts show that Wilhoit had, at the time he brought the cattle to Windom, a lien thereon for their feeding, and superior, too, to any claim of the defendant.   If, however, he then volun-tarily delivered possession thereof to the owner or claimant," then such delivery must be held, in the words of the statute, "to be an abandonment of such lien."   On this issue as to whether or not Wilhoit did

deliver possession of the cattle to Campbell and thereby abandon his lien, the trial court gave the following instruction:

"No. 3. The court instructs the jury that if you believe from the evidence that the cattle being in Wilhoit's possession, were fed and cared for by him, and driven by him to Windom, Kansas, where they were shipped to Kansas City, Kansas, in the name of the defendant company, and that Wilhoit loaded them on the cars and came along on the train with said cattle, and cared for them and stayed with them at Kansas City Stock Yards until they were weighed, for the purpose of collecting the amount due him for their care and feed, and under an agreement with Campbell that he was to be paid therefor on their being weighed at Kansas City, instead of at Windom, as originally agreed, then he did not part with his possession of said cattle in such a way as to abandon or waive his right to a lien for their care and feed."

The defendant justly complains of this instruction. It was clearly erroneous, in that it was argumentative and a comment on the evidence. As already stated, the ultimate pivotal fact for the jury's decision was whether or not Wilhoit did, at Windom, turn over the cattle to the control and possession of Campbell, the owner. In determining this question, it was proper for the jury to consider not only what the witnesses detailed as to conversations had between the parties at the time, but as well to consider every other fact and circumstances in evidence. By the foregoing instruction, however, the court practically limited the jury to the consideration of only a *portion* of these subordinate facts and circumstances; and, in effect, advised the jury that those mentioned were of paramount importance and conclusive of the case. This is not an instance where the law ascribes a particular conclusion, or raises

a particular presumption from a certain other fact or group of facts. *Leeser v. Boeckhoff*, 33 Mo. App. 223, and cases cited. Every fact recited in this instruction may be conceded and yet the conclusion, as declared, would not necessarily follow. It may be admitted, *first*, that Wilhoit had the cattle in his possession and fed them on his farm; *second*, that he drove them to Windom, where they were shipped to Kansas City in the name of defendant; *third*, that they were loaded on the cars by Wilhoit and that he went along with them to Kansas City; *fourth*, that he stayed with the cattle at the stock yards and saw them weighed, for the purpose of collecting his feed bill; and yet it may be true that Wilhoit turned over the cattle to Campbell and Windom and gave said owner the control and management thereof, as he (Campbell) testified. There are many other facts and circumstances in evidence tending to corroborate Campbell's statements, and which the jury ought to have considered.

That said instruction contains harmful error is manifest. Nor was its faulty character cured in any manner, or condoned, by any like instruction asked or given for the defendant. It concerned the vital point in the case and calls for a reversal of the judgment.

The suggestion by defendant's counsel that Wilhoit's claim against the defendant was non-assignable, is without merit. Our supreme court has said that the test of assignability of causes of action is whether the cause of action would survive and pass to the personal representative of a decedent. If it would, it is transferable by the direct act of the parties. *Snyder v. Railroad*, 86 Mo. 613; *Life Ins. Co. v. Smith*, 117 Mo. 261. Under this rule, there can be no doubt as to the assignability of the cause of action here sued on.

The judgment, however, must be reversed and cause remanded. All concur.