## S. N. Holliday, Administrator, Respondent, v. S. P. Jackson et al., Appellants.

### St. Louis Court of Appeals, April 20, 1886.

1. Practice—Pleading—Misjoinder—Waiver.—A demurrer on the ground of the joinder of an unnecessary party plaintiff is waived by pleading over.

2. Trespass—Limitations—Damages.—An action under the statute for treble damages for trespass, is barred within three years.

3. ——— Pleading—Amendment.—The amendment of a petition so as to make it state a cause of action for treble damages for trespass will not authorize proof of trespass more than three years prior to the date of the amended petition.

4. ——— An amended petition which states a cause of action for treble damages for trespass under the statute, states a different cause of action from that stated in the petition for single damages for the same trespass.

5. ——— Abettor.—In order to charge the defendant in trespass it is not necessary that he should have physically participated in the act complained of as the trespass.

6. ——— Burden of Proof.—In such an action, upon the question whether the defendant had "probable cause to believe" that he had the legal right to do the act complained of, the burden is on him.

7. ——— Evidence.—In such an action, it is not error to exclude from evidence deeds which have no tendency to show title in the party offering them at the time of the commission of the alleged trespass.

8. ——— License.—In such an action, evidence of a license to a third person from a part owner of land three years before the date of the alleged trespass, and a parol license from such third person to the defendant, is properly excluded.

9. ——— Evidence of a parol license from a part owner to the defendant, through a third person, a short time before the alleged trespass, is competent and material.

10. ——— Instructions.—In such a case, it is sufficient if the court substantially follows the statute in instructing the jury, and the instructions need not embody the element of wilfulness on the part of the defendant.

11. ——— If the court substantially follows section 3921 in its instruc-

tions, but omits the qualifications embraced in section 3924, and the jury returns a verdict for the actual damages, it is error for the court to enter judgment for treble the amount so found.

12. JUDGMENTS—COLLATERAL ATTACK.—In collateral proceedings, the validity of judgments of courts of record will not be inquired into.

13. PRACTICE—MISCONDUCT OF COUNSEL.—The action of an attorney, at the reading of a deposition at the trial, in denouncing, in the hearing of the jury, the testimony as false, and in stating that he had defended the witness on a charge of felony, is such an abuse of privilege as will warrant the court in setting aside a subsequent judgment and in granting a new trial, although the court's attention was not called to the misconduct at the time it was committed.

APPEAL from the Butler County Circuit Court, GEORGE H. BENTON, Special Judge.

*Reversed and remanded.*

GEORGE N. BOUGHTON and T. H. MAULDIN, for the appellants: The amended petition is in effect a new action. *Buel v. St. Louis Transfer Company*, 45 Mo. 526 ; *Scoville v. Glasner*, 79 Mo. 449 ; Story's Eq. Pl. sect. 904. The words wilfully, intentionally, wrongfully, or words of similar import should have been in the instruction. *Schmidt v. Denmore*, 42 Mo. 225 ; *The State v. Newkirk*, 49 Mo. 84. The defendants had a right under a general denial to attack the title set up by the plaintiffs. *Greenway v. James*, 34 Mo. 326. The list of swamp lands showed title in Stoddard county in 1867. Rev. Stat., sect. 6151 ; *Dale v. Wright*, 57 Mo. 110. The sheriff's deed to Ringer and Crumb, being founded upon a general execution against swamp lands belonging to the county, is void. *Robbins v. New Madrid County Court*, 51 Mo. 82.

C. L. KEATON, for the respondent : The defendant, Malone directed the work, assented to it after it was done, and received the full benefit, and is hence a trespasser. *Canifax v. Chapman*, 7 Mo. 175 ; *Allred v. Bray*, 41 Mo. 448 ; *McNeeley v. Hunton*, 30 Mo. 332 ; *McManus v. Lee*, 43 Mo. 206 ; *Murphy v. Wilson*, 44

Mo. 313; *Ullman v. Railroad*, 67 Mo. 118; *Dooley v. Kansas City*, 82 Mo. 444; *Cooper v. Johnson*, 81 Mo. 483. There was no error in instructing the jury to find for any trespass committed by the defendants at any time within three years from the twenty-third day of November, 1881, the date of filing the original petition. The suit was commenced then for the same cause of action, describing the same trespass by the same parties, same time, etc., and the amended petition was only a different statement of the same cause of action, inserting other allegations material to the case, and did not change substantially the claim of the plaintiffs. Rev. Stat., sect. 8567. And could have been made expressly to save the statute of limitation. *Lottman v. Bennett*, 62 Mo. 159; *Henry v. Lowe*, 73 Mo. 96 98; *Young v. Glasscock*, 79 Mo. 575, 580. And this amendment might have been made at any time before final judgment. Rev. Stat., sects. 3567, 2573; *Young v. Glasscock*, 79 Mo. 575, 580; Rev. Stat., sect. 3921; *Welday v. Jones*, 79 Mo. 171. And, again, the defendants made no objection to the amended petition on the ground of departure, but refiled their original answer, a general denial, and went to trial on these issues, and the first we hear of the objection to the amended petition is in the instruction of the defendants and the motion for new trial; the objection, if any, came too late—was waived. *Scoville v. Glassner*, 79 Mo. 449, 452–5; Rev. Stat., sect. 3519; *The Southworth Company v. Lamb*, 82 Mo. 242 247–8. The words wrongfully and without leave in the petition are sufficient under the statute (Rev. Stat., sect. 3821), with the allegation that the defendants had no interest or right in the lands. *Hewitt v. Harvey*, 46 Mo. 368; *Humes v. The Missouri Pacific Ry. Co.*, 82 Mo. 321, 328. The defendants can not set up title in Stoddard county, that is justify under Kitchen & Bogy's title, and then attack it. These are inconsistent defences—the plaintiffs allege that they are the owners of the land and prove it, and the defendants claim no rights under the county. *Reed v.*

*Price*, 30 Mo. 442; *Renshaw v. Lloyd*, 50 Mo. 368; *Austin v. The Huntsville Coal and Mining Co.*, 72 Mo. 535, 539–43; *Wilcoxson v. Osburn*, 77 Mo. 621, 628; *Matney v. Graham et al.*, 59 Mo. 190, 192–3. There was no error in the court trebling the damages, the jury were instructed to find the value and the court should treble the damages or verdict. *Henry v. Lowe*, 73 Mo. 96. And the burden was on the defendants to show that they had probable cause to believe they had a right on the land, etc. *Henry v. Lowe*, 73 Mo. 96; *Walther v. Warner*, 26 Mo. 143; Rev. Stat., sect. 3924. There was no error in refusing the defendants' instructions five and six. The amended petition is the only petition in the case at the trial. Rev. Stat., sect. 3576; *Soulard v. City of St. Louis*, 40 Mo. 144; *Ticknor v. Vorhies*, 46 Mo. 110. And relates back to the commencement of the action. Rev. Stat., sect. 3576; *Ticknor v. Vorhies*, 46 Mo. 110.

THOMPSON, J., delivered the opinion of the court.

This action was originally brought on the twenty-third day of November, 1881, by the plaintiff Holliday, as administrator of the estate of Louis V. Bogy, deceased, and by the other plaintiffs joining with him as heirs at law of Louis V. Bogy, deceased, to recover damages for the trespass of cutting and carrying away timber from certain lands, of which it was alleged the said Louis V. Bogy, in his lifetime was the owner, and of which the plaintiffs were, at the time of the taking, the owners. On the twenty-fourth of September, 1883, the plaintiffs filed an amended petition setting up the same trespasses, but claiming treble damages, and framing their allegations so as to state a case within the statute giving treble damages for cutting down or carrying away timber. Rev. Stat., sect. 3921. The answer was a general denial. There was a trial before a jury and a verdict against both defendants in the sum of five hundred and fifty dollars, upon which the court gave judgment, in conformity with the prayer of the petition, in the sum of

$1,650, trebling the damages. Both defendants have appealed to this court.

I.   There was a demurrer because of the joinder of Holliday as party plaintiff, which the court overruled. This does not present any question for review, because the defendants waived the objection by pleading over.

II.   The action, being upon a statute for a penalty or forfeiture where the action is given to the party agrieved, it was subject to the limitation of three years prescribed in section 3231, Revised Statutes.

In view of the filing of the amended petition, it became a material question whether this period of limitation reached back three years from the date of the filing of the original petition, or from the date of the filing of the amended petition.   The court refused an instruction offered by the defendant to the effect that the jury should not take into consideration any timber taken prior to September 24, 1880, which was three years prior to the filing of the amended petition, but gave an instruction which authorized them to give damages for the value of all timber cut and carried away at any time during three years prior to the twenty-third day of November, 1881, the date of the filing of the original petition.   If the amended petition amounted to nothing more than a different or more formal statement of the same cause of action,   these rulings were correct; but if it set up a substantially different cause of action, then the filing of it was equivalent to the bringing of a new action, so far as regards the running of the statute of limitations, and the rulings were incorrect.   It is clear beyond any doubt that the amended petition states a different cause of action from the original petition.   In *Scoville v. Glasner* (79 Mo. 449), it is laid down in substance that the test by which to determine whether an amended petition states a new cause of action, is to consider, (1) Whether the same evidence will support both petitions ; (2) Whether the same measure of damages will apply to both.   In this case neither of these conditions exists.   The evi-

dence which will support a petition for a common law trespass *quare clausum fregit*, or *de bonis asportatis*, will not support a petition for treble damages under the statute. In the former case no element of wilfulness, malice, or negligence is necessary to charge the defend-ant. He may have committed the trespass under a mistaken view of his legal rights, but he will none the less be liable to the plaintiff for the actual damage which the latter has sustained. He may have had probable cause to believe, in the case where the trespass consisted in cutting and removing timber, that he was cutting and removing it from his own land, a thing which might easily occur owing to a mistake as to boundary lines; yet this would be no defence to the action at common law, although the mistake were brought about by the plaintiff himself. *Pearson v. Inlow*, 20 Mo. 322. Yet under the terms of section 3924, Revised Statutes, it would be a good defence to an action under the statute, so far as to reduce the recovery to single damages and costs. Moreover, the measure of damages in the two actions is essentially different; in the one it being the value of the thing taken, and in the other treble the value of the thing taken. But the action under the statute carries with it another incident which does not pertain to the action at common law. The judgment in the action at common law is enforced by execution, the same as ordinary judgments in civil cases; but, by the terms of section 3926, Revised Statutes, the judgment in the action under the statute may be enforced by committing the defendant to jail until the judgment and the costs are paid, or until he is relieved under the provisions of the law relating to insolvent debtors. Such being the difference between the two actions, the one highly penal and enforced by the arrest and imprisonment of the body of the defendant, and the other having for its object merely to restore to the plaintiff what he has lost and enforcing his judgment by ordinary execution, in which imprisonment of the debtor's body is

prohibited—there can be no room to doubt that the one is essentially a different action from the other, and that an amendment which changes the action from that at common law to that under the statute, states an entirely new and different cause of action.

III. It may be material to consider, in view of another trial, the objection that there was not sufficient evidence to support the verdict as against the defendant Malone. After a careful reading of the record, we have come to the conclusion that this objection is not·well taken. The evidence tends to show that the defendant Malone and the defendant Jackson were associated together in some way; just in what way, does not appear. But it does appear that Malone was the owner of a saw mill upon Little River, at a point below the land from which the timber was taken; that Jackson was employed by him to cut and float timber from lands above his mill down to the mill, for which Malone paid him a stated price per thousand. There was some evidence indicating that the teams which Jackson used belonged, in whole or in part, to Malone. One of the defendant's witnesses described himself as having worked for Malone and Jackson. There was abundant evidence to show that Jackson knew that he was taking timber from land which did not belong to him, and that he determined to take his chances of prosecution and let the real owner of the land prove his title. Malone's own testimony, also, shows that he knew that Jackson was cutting timber from the land in controversy; but he sets up as a defence that he directed Jackson not to cut timber from that land until he, Jackson, had procured the consent of Colonel Kitchen, whom he, Malone, understood to be a part owner of the land. He testified as follows: "Kitchen told me that he and Bogy owned twenty thousand acres of land along Little River. I never had any knowlege of Jackson cutting timber on these lands except what I heard from others. I would not let him take the team up the river after McVey left,

until he sent a man to Col. Kitchen in regard to cutting timber, and he reported to me that he had permission from Col. Kitchen to cut timber, the same that McVey had.'' The general rule in regard to trespasses is that all who direct the commission of a trespass, or wrongfully contribute to its commission, or assent to it after it is committed, are equally liable to the injured person. *Canifax v. Chapman,* 7 Mo. 175 ; *Allred v. Bray,* 41 Mo. 484 ; *McMannus v. Lee,* 43 Mo. 206. And it is quite unnecessary, in order to charge a defendant in an action for a trespass, that he should have physically participated in the act of seizing and removing. *McNeely v. Hunton,* 30 Mo. 332. No reason is perceived why this rule should not apply to actions for treble damages for trespass under the statute. The statute makes the action rest upon the cutting down, destroying, or carrying away of certain named property, in which the person committing the act ''has no interest or right, standing, lying, or being upon lands not his own.'' Rev. Stat., sect. 3921. In another section it prescribes what shall be a defence to the action, in the following language : '' On the trial of any action or prosecution brought upon this statute, if it shall appear that the defendant had probable cause to believe that the land on which the trespass is alleged to have been committed, or that the thing so taken, carried away, injured, or destroyed, was his own, the plaintiff in the action or prosecution shall receive single damages only, with costs.'' Rev. Stat., sect. 3924. This ''probable cause to believe,'' etc., is the one thing which distinguishes the action for treble damages from the common law action for single damages ; and it is held that in order to show that the defendant had such '' probable cause to believe,'' etc., so as to take the case out of the statute, the burden is upon him. *Walther v. Warner,* 26 Mo. 143, 149 ; *Henry v. Lowe,* 73 Mo. 96, 100. Whether or not there was such a probable cause was for him to make clear to the jury ; it was a question of fact for them to

determine ; and hence his participation, with knowledge, in the taking having been shown, it is clear that it can not be held that the evidence was not sufficient to take the cause to the jury as against him.

IV.   We do not see any error in excluding from the jury a certified list of swamp lands held by the county of Stoddard, in 1867, and also a deed from Stoddard county by the sheriff to Louis Ringer and D. S. Crumb. As Ringer subsequently conveyed to the late Louis V. Bogy, these documents would have no tendency to show title in Stoddard county at the time of the trespasses complained of, which were long subsequent to the conveyance from Ringer to Bogy.   This evidence seems to have been offered on the theory that the sheriff's deed, being founded on a general execution against swamp lands belonging to the county, is void, under the decision in *The State ex rel. v. New Madrid County* (51 Mo. 82).   We can not investigate in this collateral proceeding, whether the deed in the particular case was void or not.   It recites a judgment rendered by the circuit court of Stoddard county in favor of Ringer and against the county of Stoddard for $1136.80.   The judgment was a judgment of a superior court of record, possessing a general jurisdiction, and in a collateral proceeding it must be presumed to have been properly rendered, no want of jurisdiction being affirmatively shown. It, therefore, pronounced the law of the case and can not be overturned in this proceeding, especially for the purpose of defeating an otherwise meritorious cause of action against naked trespassers.

V.   The court committed no error in excluding the admission made by the plaintiff under the statute, intended to obviate a continuance, that McVey, if present, would testify that he had an agreement or contract with Col. Kitchen, some time during the year 1877, to cut timber from the land described in the petition, for which he was to pay Kitchen, through Kirby and Malone, at a stated rate per thousand feet, and that he, McVey, told

the defendant Jackson that he might cut timber on the land, informing him that it belonged to Bogy and Kitchen, and that he, McVey, had authority to cut timber. Aside from the fact that this relates to a period three years anterior to the earliest period to which the inquiry, by the statute of limitation, must be confined, it does not appear that Kitchen gave to McVey any license such as McVey might assign to Jackson. A personal license to McVey would not authorize McVey to extend a similar license to Jackson, and it is not stated that McVey would testify that Jackson was in his employ.

VI. Col. Kitchen, according to his testimony, parted with his interest in the land to the Bogy heirs in 1879, but in what part of 1879 he does not state. A witness named Taylor testified that in the year 1879 he was working for Jackson and Malone, from June or July until December; that in the fall of that year he went to see Col. Kitchen, for Jackson, about the timber where McVey had been cutting; that Kitchen told Taylor that if Malone could stand good for the pay, they could cut the timber; that the witness saw Malone pay Kitchen somewhere near thirty-five dollars at one time. On cross-examination the witness admitted that he could not say whether it was in the year 1878 or 1879 that this happened. This testimony, if true, was very material, for it would tend to show that Jackson had a parol license from Kitchen to cut timber on the land before Kitchen parted with his interest in the land to his co-owners, and as a state of things shown to exist is presumed, within certain limits, to continue, in the absence of all showing to the contrary, it might be inferred that the defendants acted under the belief, founded upon reasonable grounds, at the time when they did cut the timber, that this license was still unrevoked. While the trial was in progress, the following incident, as recited in the bill of exceptions, occurred, relating to this testimony of Taylor: "While the defendant Malone was testifying, and when

he referred to Jackson sending a man to see Col. Kitchen about cutting timber, Col. Kitchen, of counsel for plaintiff, arose, and, in a loud, angry, and excited manner exclaimed: "It is a falsehood! That man Taylor never came to see me at Dexter, or anywhere else, about cutting timber. I never saw him in my life until I defended him at Bloomfield for stealing a cow. On being assured by Mr. Mauldin and Mr. Boughton (counsel for the defendants) that he was mistaken as to the man, that it was a man named Clark Taylor that he defended, and not the man referred to by Malone, Kitchen still insisted that it was the same man whose deposition had just been read." Immediately thereafter Kitchen took the stand as a witness for the plaintiff in rebuttal, but was not cross-examined by defendants' counsel as to the facts thus stated by him in the hearing of the jury. Nor does the record disclose that any objection was made to the court against his making these statements, or that the court was requested to direct the jury to disregard them. The general rule, often acted upon by the supreme court, and by this court, is that improper remarks made by the counsel of the successful party in the presence of the jury, will not be a ground for a new trial unless the attention of the judge was drawn to them at the time, and he was asked to correct them, to instruct the jury to disregard them, or to make some other appropriate correction, by rebuking counsel, or otherwise. This rule has not been uniformly acted upon. Counsel might be guilty of such gross misconduct in the presence of the jury as to justify a discharge of the jury and a continuance of the cause. In the present case the remarks made by the counsel were of the nature of evidence in the cause ; impeaching the character of a material witness for the defendants and contradicting his testimony, and must have been highly prejudicial. All courts hold that it is a ground for a new trial for the successful party or his counsel to state in argument to the jury, or other-

wise, without being on oath, material evidential facts prejudicial to the unsuccessful party. If there were no other reasons for reversing the judgment in this case, we incline to think that because of the making of these remarks we should not be able to allow it to stand.

VII. Some observations seem to be called for upon the instructions given and refused beyond those which have already been made upon the instructions relating to the period of limitation. We do not see that the court erred in refusing these instructions which were tendered by the defendant and refused. We do not understand that it is incumbent upon the court, in instructing the jury in an action of this kind, to embody in the instructions the element of *wilfulness*, as is argued by the learned counsel for the defendants. The statute is careful to exclude this, and to state a ground of recovery broad enough to include *negligence* as well as wilfulness; and we think it sufficient that the jury are instructed substantially in the terms of the statute. But the jury were not instructed in this case in all the elements of the statute upon which the right to recover treble damages is predicated. The statute, in section 3921, defines the ground of action, and, in section 3924, states what shall be a good defence to the action so far as to reduce the recovery to single damages. The provision of section 3924 is in the nature of a proviso to section 3921, and should manifestly be so read. Reading the two sections together, so far as they apply to this case, their language is as follows : "If any person shall cut down, injure, or destroy, or carry away, any tree placed or growing for use, shade, or ornament, or any timber rails or wood standing, being, or growing on the land of any other person, * * * the person so offending shall pay to the party injured treble the value of the things so injured, broken, destroyed, or carried away, with costs." Rev. Stat., sect. 3921. " On the trial of any action or prosecution brought under this statute, if it shall appear that

the defendant had probable cause to believe that the land on which the trespass is alleged to have been committed, or that the thing so taken, carried away, injured, or destroyed was his own, the plaintiff in the action or prosecution shall receive single damages only, with costs." Rev. Stat., sect. 3924.

It is perceived that the former of these sections states the offence to be the cutting down, carrying away, etc., of timber from the land of another person, and that the latter relieves the trespasser from liability, except for single damages, where he had probable cause to believe that the land on which the trespass was committed, or the thing taken, carried away, etc., was his own. Applying the statute to the evidence in this case, the plaintiffs made out a *prima facie* case of liability by showing that the defendants had cut and removed the timber from the lands belonging to the plaintiffs. The defendants made out a *prima facie* defence, if they succeeded in showing that, in cutting and removing the timber, they acted under a parol license from Kitchen, a part owner of the land ; for such a license would make the timber removed the defendants' timber, within the meaning of section 3924.

Now, the principal instruction upon which the case was put to the jury reads as follows : "The court instructs you, gentlemen of the jury, that if you believe from the evidence that the plaintiffs were, on the twenty-third day of November, 1881, and for more than three years previous thereto, the owners of the land described in plaintiffs' petition, and that defendants, without authority from plaintiffs, and without having any interest or right in the land in question, or to the timber standing on said lands, did enter upon said lands at any time during three years previous to the twenty-third day of November, 1881, and cut down or cause to be cut down, and carry away or cause to be carried away, timber or wood growing on said lands, then you will find a

verdict for plaintiffs and assess their damages at the value of the timber so cut down and carried away."

This instruction, it is perceived, leaves out the element contained in section 3924, Revised Statutes, of the defendants having reasonable cause to believe that the timber was their own. Concerning this instruction it must be, therefore, said, that a verdict in accordance with it is not a sufficient predicate on which the court could enter a judgment for treble the damages. The action is penal in its character, and where there is any evidence tending to relieve it of its penal character and to make out a case for the recovery of single damages only, that element must be embodied in the instructions given, in order to warrant the trebling of the damages. The giving of the instruction was not of itself error; but it was error, after putting the case to the jury upon the instruction, to treble the damages.

The judgment will be reversed and the cause remanded. It is so ordered. All the judges concur.