Anderson v. Union Terminal R'y Co.

ANDERSON, by Next Friend, v. UNION TERMINAL
RAILROAD COMPANY et al., Appellants.

Division One, March 26, 1901.

1. **Negligence:** EVIDENCE: ORDINANCE: SPEED OF TRAINS: CURED BY IN‹
STRUCTION. The permitting of the reading in evidence of an ordi-
nance regulating the speed of railroad trains within a city, without
any allegation in the petition that the railroad had accepted the
same, is erroneous; but if the court afterwards by an instruction
directs the jury to disregard the ordinance, the error is cured.

2. ———: ———: REBUTTAL: CONTRADICTION OF PARTY'S WITNESS:
CURED BY INSTRUCTION. The bringing out, on cross-examination by
plaintiff of defendant's witness, of facts and circumstances injurious
to plaintiff, which were not detailed by said witness in chief, makes
such witness, on that point, plaintiff's witness, and his testimony
can not therefore be contradicted on rebuttal, but the error in ad-
mitting such rebuttal testimony may be cured by an instruction
which withdraws it from the jury.

3. ———: ACTS OF ANOTHER: PAID FOR BY DEFENDANT. Where one
company alleges that the alleged negligence in placing cinders on
its track as ballast, was done by another company for it and paid for
by it, the said act becomes its own, and if negligent it is charge-
able therewith.

4. ———: CHILD: CONTRIBUTORY NEGLIGENCE. The care and caution
required of a child in crossing a railroad track is not determined
by the strict standard applied to adults, nor is he to be charged
with contributory negligence if he acted as might reasonably be
expected from one of his age and capacity. A bright and active
boy, eleven years old, had been playing near where defendant's train
was switching, and in going home along or near the track stopped
twice and observed it still switching. At the place of the accident
defendant had dumped coal cinders to be used as ballast, and it re-
mained piled up, three or four feet high, just as it had been unload-
ed. At that crossing the track was on the street grade, and crossing
it was a street railway, where cars passed every minute or two, and

the railroad company's rule was to send one of its employees to the crossing to observe if the track was clear before its trains crossed. When the boy was within about a block of this crossing he looked and saw the train still switching. The next he saw of it, he says, was when he stepped on to the track, and looking, saw the cars ten or fifteen feet distant, with no employee on the lookout. To avoid danger, he backed off of the track, but stumbled on the pile of cinders, and slid down that, and the car took off his foot. The defendant's evidence was that he tried to jump on one of the cars and fell under them. *Held*, that the court, under this state of the case, would not have been justified in instructing the jury, as a matter of law, that the boy was guilty of such contributory negligence as precluded his recovery.

5. ———: INSTRUCTIONS: SUPPLIED BY OPPOSITE PARTY. An omission in plaintiff's instructions may be supplied by those given for defendant.

6. ———: ———: UNDER LIKE CIRCUMSTANCES. The care which ought reasonably to be expected of a person "under like circumstances," simply means, under the circumstances shown in evidence. So that an instruction which tells the jury that ordinary care is that degree of care which ought reasonably to be expected from a person of ordinary prudence "in view of all the circumstances developed in evidence," is not open to criticism simply because he did not use the words "under like circumstances."

7. Instructions: BASED ON EVIDENCE. An instruction which is not predicated upon the facts of the case should be refused.

8. Contributory Negligence: SEEING OBSTRUCTION ON TRACK. A pedestrian who knows of an obstruction on a railroad track at a crossing or near the track, for instance, a pile of cinders put there by the road, is not chargeable with negligence *per se* in not seeing it.

9. Negligence: PLEADING: VARIANCE: SUFFICIENT PROOF. Where the basis of the cause of action is the unsafe condition of the street where the defendant's train injured plaintiff, it will not be held that there is a variance in the cause of action simply because it is charged that the unsafe condition was in violation of a city ordinance, for such may be striken out and there will remain, as there was before, a good statement of a common-law action. Nor will it be held that there has been a failure of proof simply because all

the allegations of the petition were not proven. If there has been a sufficiency of proof to sutain the common-law action stated in the petition, the judgment will stand.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

AFFIRMED.

*Trimble & Braley* and *Edwin Silver* for appellants.

(1)   (a) The court erred in permitting plaintiff, against defendants' objections, to read in evidence section 3 of ordinance 833, and ordinance 522, of Kansas City, Kansas.   By these ordinances, a civil liability was sought to be created, in favor of plaintiff against the defendants, in the absence of any averment in the petition that defendants had accepted said ordinances.   The admission of the ordinances in evidence was therefore error.   Sanders v. Railroad, 48 S. W. Rep. 855; Byington v. Railroad, 49 S. W. Rep. 840.   (b)   The general character and course of the trial and the fact that the verdict is obviously overwhelmingly against the weight of the evidence, strongly indicates that the unfavorable impression necessarily produced by the illegal evidence remained with the jury after their retirement to the jury room.   Such being the case, the error in its admission was not cured by the instruction, given long after its admission, withdrawing it from the jury.   Cobb v. Company, 12 Mo. App. 130; Meyer v. Lewis, 43 Mo. App. 417; Stephens v. Railroad, 96 Mo. 207; Erben v. Lorillard, 19 N. Y. 299; McAllister v. Press Co., 85 Mich. 453.   (2) Plaintiff, according to his own testimony, as detailed by himself on the witness stand, was guilty of contributory negligence as a matter of law, notwithstanding his youth, in approaching

within "one or two feet" of the track before looking back for the train (especially when he knew it was behind him and coming in his direction), and also in walking backwards four or five steps, after seeing the train the last time, until he fell over the cinder pile.    Payne v. Railroad, 136 Mo. 562; Payne v. Railroad, 129 Mo. 405; Spillane v. Railroad, 135 Mo. 414; Ridenhour v. Car Co., 102 Mo. 287; Casey v. City, 163 Mass. 507; Masser v. Railroad, 68 Iowa, 602; Reynolds v. Railroad, 58 N. Y. 249; Wendell v. Railroad, 91 N. Y. 420; Tucker v. Railroad, 124 N. Y. 308; Nagle v. Railroad, 88 Pa. St. 35; Streets v. Railroad, 54 N. J. Law, 518; Egley v. Railroad, 2 Washington, 407; Henderson v. Railroad, 74 N. W. 525; Hayes v. Norcross, 162 Mass. 546; Sewell v. Railroad, 50 N. E. 541.    (3)   The cinder pile was not the proximate cause of the accident, and such being the case, plaintiff can not recover. Stanley v. Railroad, 114 Mo. 606; Nagel v. Railroad, 75 Mo. 661; Hoag v. Railroad, 85 Pa. St. 293; Railroad v. Bigham, 90 Tex. 223; Bleid v. Railroad, 57 N. W. 117; Desenreiter v. Company, 72 N. W. 735.    (4)   The trial court erred in giving instruction number 2 as asked by plaintiff.   (a)   The law, without any special license from the city, gave defendants the right to place the cinders in the street for their contemplated use, provided such occupation of the street was not unreasonably prolonged.    Clair v. Fry, 8 Ohio St. 358; People v. Cunningham, 1 Denio 524; Cowan v. Railroad, 48 N. W. 166.   (b)   Where a party asks an instruction covering the whole case (as here), he must not so frame it as to exclude points covered by the evidence of his adversary.    Clark v. Hammerle, 27 Mo. 55; Fitzgerald v. Hayward, 50 Mo. 523; Mansur v. Botts, 80 Mo. 657; Bunyan v. Railroad, 127 Mo. 22; Quirk v. Railroad, 126 Mo. 279; Ellis v. Wagner, 24 Mo. App. 407.    (5)   Plaintiff's petition was fatally defective in not charging the unreasonable prolongation of the use of the

street with the cinders, and the motion in arrest of judgment was for that reason well taken.   Cowan v. Railroad, 48 N. W. 166.   (a)   Plaintiff's instruction number 3, defining ordinary care, is likewise erroneous in the use of the concluding words, "in view of all the circumstances in evidence."   The objectionable terms referred to all the evidence in the case, both documentary and oral, hence afforded the jury no rule or guide in determining the meaning of the term ordinary care, and was misleading. Cohn v. Kansas City, 108 Mo. 37. (b) So plaintiff's instruction number 3 (that if the jury found plaintiff to be of immature years and that he had not the capacity of an adult, he was not guilty of contributory negligence if he exercised the care, reasonably to be expected of one of his age and capacity) ought not to have been given under the rulings of this court, it clearly appearing from the evidence that plaintiff was a bright, smart boy, accustomed to go away from home by himself, that he was familiar with trains and the danger incident to them and had been so warned by his mother. Payne v. Railroad, 136 Mo. 562; Payne v. Railroad, 129 Mo. 405; Spillane v. Railroad, 135 Mo. 414.   (6)   "Where from the evidence there is no doubt as to the boy's capacity to know and avoid the danger in the particular case, the court should, as a matter of law, determine the question, otherwise it should be referred to the jury."   Payne v. Railroad, 129 Mo. 416; Hayes v. Norcross, 166 Mass. 546.   (7)   "While he is only bound to show that he exercised such care as ordinary boys of his age and intelligence are accustomed to exercise under like circumstances, the standard is the conduct of boys who are ordinarily careful."   Hayes v. Norcross, 162 Mass. 548. (8) The plaintiff having brought suit on statutory or ordinance negligence, should not have been permitted to recover for common-law negligence.   The common-law negligence was a new and different cause of action, and if recovery was at all per-

missible for it, such could have been the case only on an amended petition. Hansberger v. Railroad, 43 Mo. 196; Holliday v. Railroad, 21 Mo. App. 660; City of Kansas v. Hart, 57 Pac. Rep. 939; Railroad v. Wyler, 158 U. S. 285.

*Ellison & Turpin* and *Frank Hagerman* for respondent.

ROBINSON, J.—This action is brought by the plaintiff, Otto Anderson, a minor, by his next friend, against the Union Terminal Railroad company and the Kansas City Suburban Belt Railroad company, for personal injuries received by him on December 7, 1895, on Ohio avenue between Wood street and Armstrong avenue, in Kansas City, Kansas. The injury, it is claimed, was occasioned through the alleged negligence of defendants in placing upon and maintaining in said street a pile of cinders and ashes. The cause was tried before a jury, and plaintiff recovered a judgment of $6,500. From this judgment defendants appealed.

The defendants answer separately; their answers, however, set up the same defenses. After admitting the incorporation of defendants and generally denying the other allegations of the petition, the answers averred in substance: first, that the track was laid under ordinance 2164, of Kansas City, Kansas, that it was new, unfinished and incomplete and necessary to be ballasted and surfaced, and to accomplish such purpose, the Union Terminal Railroad company, a short time before the injury in question, caused to be scattered beside and along the track on Ohio avenue, cinders which were afterward used for ballasting and surfacing same, but that the same at no time constituted an obstruction to travel; second, the plaintiff was guilty of contributory negligence, in that he negligently approached so near the track, without looking to see, or listening to hear, whether the train was approaching;

third, that plaintiff's injuries were caused by his attempt to climb upon a moving train, in violation of ordinance 54, prohibiting such acts. The reply was a general denial of the new matter set forth in the answer.

Briefly stated, the records present substantially the following case:

The Terminal company constructed and owned a railroad track running at grade, east and west, in the center of Ohio avenue in Kansas City, Kansas. A double-track cable street railway was operated upon James street, which runs north and south, crossing Ohio avenue at right angles. The cable cars crossed the Terminal company's track at grade, about every two minutes. The next parallel street west of James is Wood, or First street, upon which was operated at grade, the tracks of the Kansas City, Northwestern and Chicago, Great Western railroads. The next parallel street to Wood was Armstrong avenue, or Second street. Between Armstrong avenue and Wood street, the terminal company maintains a track on the south side of the street. The Suburban company was organized on July 13, 1892, by a consolidation, under the laws of this State, of the Consolidated Terminal Railway company, and the Kansas City Suburban Belt Railway Company.

Prior to the consolidation, however, the Terminal company leased its road to the Consolidated Terminal Railway Company, and the latter agreed to maintain and operate the same. The evidence discloses that the railroad in question was constructed and put in operation in 1892 or 1893. The ordinance, by virtue of which defendants occupied the street with a railroad, contained a grant to the Terminal company and its assigns, of the right to maintain and operate a road upon condition that the railroad company "shall plank and maintain all crossings of streets and alleys now laid out, or that may

hereafter be laid out, across the tracks of said company, with three-inch oak plank, for the full width of said street and alleys, between the rails of its tracks, and for the space of three feet on the outside of the rail of its track, and also where said railway is built on Ohio avenue, said railroad shall plank the space between its tracks, and eighteen inches on either side thereof, the entire length of Ohio avenue occupied by said railroad, except where said railway crosses streets and alleys, shall be planked as aforesaid for the space of three feet on the outside of the track."

It seems that this condition of the franchise was never complied with. A day or two before the accident in question, the Suburban company hauled a lot of cinders and dumped them at the side of the track, on Ohio avenue, between Wood street and Armstrong avenue, and permitted them to remain in sloping piles just as dumped from the train. Although this work was done by the Suburban company, yet it appears that the expenses thereof were charged up to and paid by the Terminal company. There was evidence tending to show that it was negligence in defendants to leave the cinders in the condition in which they were placed. It further appears that the plaintiff, a lad between nine and ten years of age, lived on the west side of Wood street, about fifty feet from the corner of Ohio avenue; the lot, however, extended to the alley between Wood street and Armstrong avenue. He had been down watching some boys skating on a pond a short distance east of James street, and left there for home, intending to go in at the alley. He passed along the south side of Ohio avenue until just after he crossed Wood street, when he started to cross Ohio avenue to the opening of the alley leading to his home. When he left the pond the Suburban train was switching in that vicinity. It was the custom for trains to stop before crossing the railroad track on James and Wood streets to enable the trainmen to go

forward to see if the crossing was clear.    Just after the plaintiff crossed James street, he looked back and saw the train still switching; after he had crossed Wood street, he looked again back to the east, and saw the train nearing James street, thus making it necessary for the train to stop twice before it passed Wood street if it observed the custom of flagging trains that might be passing on the cross streets.    After crossing Wood street, he started to cross Ohio avenue, and reached a point within one or two steps of the track when he looked again to the east and saw the train approaching and within fifteen or twenty feet of him.    The engine was at the rear of the train of six or seven cars, pushing them, and no employee was at the front or west end on the lookout, though the rules of the company require it.    Thinking there was not time to cross in front of the moving train in safety the boy stepped back in order, as he says, to get out of the way of the train, but as he did so, he stumbled against and fell over one of the cinder piles, which he says he had not noticed, and which had not been leveled, but had been left three or four feet high, just as it had been dumped from the car by defendants.    When he fell he says he tried to scramble out of the way but slipped down the side of the cinder pile till one leg slipped under the moving train and was cut off.    The other facts necessary to be stated will appear later on in the opinion.

The court below permitted plaintiff, against defendant's objection, to read in evidence section 3 of ordinance 833 of Kansas City, Kansas, making it unlawful to deposit cinders in the street, and ordinance 522, prohibiting the backing of a train without a watchman at the end, requiring the ringing of the bell on all moving trains, and limiting the rate of speed to six miles an hour, without any averment in the petition of the acceptance of said ordinances by the defendants.    The court, however, at the close of the evidence, withdrew said ordinances by

an instruction and directed the jury to disregard the same. It is contended by defendants, that under the rulings of this court, in Sanders v. Railroad, 147 Mo. 411; and Byington v. Railroad, 147 Mo. 673, the court below erred in permitting plaintiff to read the ordinances in evidence, without an allegation that defendants had accepted the same, and that the instruction given by the court at the conclusion of the evidence, directing the jury to disregard the ordinances, did not cure the error complained of.

The admission of the ordinances under the rulings of this court in the above cases, was undoubtedly erroneous. But as the objectionable evidence had been eliminated from the case, by instruction, the error in its admission was cured. It is well settled in this State, that where erroneous evidence has been admitted during the trial, the error in its admission may be cured, by afterward withdrawing the objectionable evidence from the jury. [Stavinow v. Home Ins. Co., 43 Mo. App. 513; O'Mellia v. Railroad, 115 Mo. 205; McGinniss v. Loring, 126 Mo. 404.] In Stephens v. H. & St. J. Ry. Co., 96 Mo. 207, an action for personal injuries sustained by an employee while acting as track-repairer, it was held that the court may exclude by instructions improper evidence that has reached the jury, and when this is done, the fact that such objectionable evidence was heard by the jury, will not operate as a reversal of the judgment. Particularly is that so, where nothing appears to indicate that the verdict was in any way affected by it.

Miss Head was introduced as witness by defendant and testified in effect that about six or seven weeks before the trial she met the plaintiff on his way home from school and had a conversation with him touching the accident; that she inquired of him how the accident occurred, and he replied that he was jumping on the car and stumbled and was thrown under in some way, and his leg cut off. Subsequently, on cross-ex-

amination, plaintiff's counsel brought out the fact, that some time after the accident, Miss Head, who had been plaintiff's school teacher, went to his home and saw him and his mother and sister. The witness was then asked by counsel for plaintiff, if she "found out the same thing that time," to which the witness answered, "the mother stated the same thing to me that day." The witness further stated in response to the question of plaintiff's counsel, that Hulda Anderson (plaintiff's sister), was also present at the time of the conversation referred to. Subsequently, during the course of plaintiff's testimony in rebuttal, his mother and sister were both called as witnesses, and against the objection of defendants were permitted to contradict the evidence brought out on the cross-examination of Miss Head. It is earnestly insisted that the court below erred in permitting the plaintiff's mother and sister to contradict Miss Head as to the conversation she testified to during the visit to plaintiff's home. We are of the opinion that plaintiff made Miss Head his own witness as to what occurred on the occasion of the visit to plaintiff's home. The court, therefore, erred in permitting Mrs. Anderson and her daughter to contradict Miss Head's statement by disproving the conversation with Miss Anderson, as testified to by Miss Head. [State ex rel v. Branch, 151 Mo. 622.] The error, however, in the admission of this testimony of Mrs. Anderson and her daughter, as in the instance of the introduction of the ordinances above noted, under the circumstances, was, we think, cured by the instruction given by the court withdrawing the objectionable testimony from the jury and directing them to disregard it. Defendant next contends that in so far as concerned negligence in the maintenance of the cinder pile, it was not the proximate cause of the injury. As said above, there was evidence tending to show defendant's negligent maintenance of the cinder pile. If, therefore, the pile of cinders was negligently maintained, and the

plaintiff, without fault on his part, was passing along the street and stumbled over the same so that his leg passed under the moving train, operated by the party so negligently obstructing the street, it can not be said that such negligence was not the proximate cause of the injury. This point will, therefore, be ruled against defendants.

It is also claimed that the trial court committed error in refusing instruction numbered 3 asked for by defendant, the Terminal company, in the nature of a demurrer to the evidence, the point being that the latter company was not guilty of any negligence, as the cinders in question were actually placed upon the street by the Suburban company. By its franchise it became obligatory in the Terminal company to maintain its track for the period of twenty years, and as a condition to the exercise of the franchise, it was required to plank the track between and outside of the rails. In leasing to the Consolidated Terminal company, which is one of the constituents of the Suburban company, the latter company agreed to maintain the track, but by a paragraph in the lease, the Terminal company renounced all its duties to the public, thereby vitiating the lease. Consequently, the lessor remains liable for the acts of the lessee. Aside from this, however, the answer of the Terminal company admits that it placed the cinders on the street for the purpose of ballasting and surfacing up the track, and by an admission made during the trial it appeared that the work was actually done by the Suburban company but paid for by the Terminal company. Under these circumstances, the Terminal company, which by its answer says that it placed the cinders on the street for its own purpose, is undoubtedly liable.

It is next insisted that the act of plaintiff, having the intelligence, experience, knowledge and general capacity he is shown by the evidence to possess, in approaching so near the track without looking back to see if the train was coming, and

also in stepping backward from the track to avoid collision, on discovery of the train, close upon him, until he fell over the cinder pile, was such contributory negligence as precluded a recovery, and consequently the court below erred in giving plaintiff's fourth instruction, to the effect that if the jury should find that plaintiff was a boy of immature age and had not the capacity of an adult, and that he exercised such care as ought reasonably to have been expected from one of his age and capacity, then he was not guilty of contributory negligence. The testimony of plaintiff and his witnesses show that the Terminal track was at the grade on Ohio avenue, running from east to west. On James street, crossing Ohio avenue at right angles and at grade, was a double-track cable street railway. These trains were running every one or two minutes. Wood street, one block west of James, also crossed Ohio avenue at right angles, and upon the same were the tracks of another railroad, also crossing at grade. The next street west and parallelling Wood, is Armstrong avenue. At James and Wood street, there were no watchmen, so when defendant's train would cross these streets on the grade-crossing of other roads, it was necessary for the train to stop and have one of its employees to go ahead to see if the way was clear before signaling the train to cross. This took about two minutes at each crossing. After plaintiff crossed James street on his way home he saw the train switching several blocks distant. There was nothing in this to indicate that the train was approaching. When plaintiff got to Wood street, he said that he looked again and the train was then near James street; after going a short distance he started to cross Ohio avenue, and when he got within one or two steps of the track, he saw the train within fifteen or twenty feet of him, and thinking that it was dangerous to cross in front of it he stepped backward and stumbled over a cinder pile which he says he had not seen and did not know was there, and as he fell he attempted

to scramble out of the way but slipped off the pile in such a way that one of his legs was caught and cut off by the passing train, on defendant's road. On the other hand, the defendant's theory, based on the testimony of two of its employees, Rush and Hunter, is that plaintiff, with another boy, stood near a car on the side track near Wood street, and as the train passed plaintiff ran toward it and tried to jump on the second car ahead of the engine, the fourth or fifth from the end, but in doing so he lost his footing, fell under the cars several feet east of the cinder pile and was not picked up at the cinder pile as stated by plaintiff's witnesses, but several feet east thereof near where he received his injury. The plaintiff's story is that he went under the first or second car at the west or front end of the train. Witness Schrader testified that when he saw him he was three or four car-lengths from the engine. The testimony of the witnesses, Rush and Hunter, was also contradicted by plaintiff's witnesses. Under the circumstances, considering plaintiff's youth and capacity, it can not be said, as a matter of law, that he acted without ordinary care.

The rule seems to be well settled in this State, that a child is not to be judged by the strict standard of an adult, neither is he to be charged with contributory negligence, if he acted as might reasonably be expected from one of his age and capacity. [Boland v. Ry. Co., 36 Mo. 484; McCarthy v. Ry. Co., 92 Mo. 536; Eswin v. Ry. Co., 96 Mo. 290; Burger v. Ry. Co., 112 Mo. 238; Lynch v. Ry. Co., 112 Mo. 420; Schmitz v. Ry. Co., 119 Mo. 256; Donoho v. Iron Works, 75 Mo. 401; Riley v. Ry. Co., 68 Mo. App. 652; Van Natta v. Ry. Co., 133 Mo. 13; Anderson v. Ry. Co., 81 Mo. App. 116.]

In Burger v. Mo. Pac. Ry. Co., 112 Mo. (1. c.) 249, MACFARLANE, J., in speaking of contributory negligence, as applied to a boy between nine and ten years of age, said: "Common experience and observation teaches us that due care

on the part of an infant does not require the judgment and thoughtfulness that would be expected of an adult person under the same circumstances.  In the conduct of a boy, we expect to find impulsiveness, indiscretion and disregard of danger, and his capacity is measured accordingly.  A boy may have the knowledge of an adult respecting the dangers which will attend a particular act, but at the same time he may not have the prudence, thoughtfulness and discretion to avoid them, which is possessed by an ordinarily prudent adult person.  Hence, the rule is believed to be recognized by all the courts of the country, that a child is not negligent, if he exercises that degree of care which, under like circumstances, would reasonably be expected of one of his years and capacity. Whether he uses such care in a particular case, is largely a question for the jury."  In the more recent case of Anderson v. Union Terminal Railroad Company et al., 81 Mo. App. 116 (an action by plaintiff's father against the present defendants for expenses incurred and loss of the boy's services), the controlling facts were identical with the case at bar, and the Kansas City Court of Appeals, in an opinion written by Judge Ellison and concurred in by the other members of the court, held that a given act, charged to be contributory negligence, can not be applied to all persons alike.  If the party doing the act is a child, the question is not whether the act is such that an ordinarily prudent person of mature years would have committed it, but is whether the act is such that might be expected from a child of the knowledge, age and discretion the party charged is shown to be.  In the course of the opinion it is said: "The reason of the rule exempting children from responsibility, does not depend so much on the knowledge and sprightliness of the child, as it does on his indiscretion, imprudence, lack of judgment, and impulsiveness. All children nine years old know as well as grown persons that if a railway car runs over them it will kill or maim them; they

know that as well as they know that fire will burn them, yet, speaking generally of course, all children near that age, are by nature more reckless and thoughtless than grown persons, and consequently are more likely to be run over or burned. The law of nature has implanted thoughtlessness and imprudence in the child as it has prudence and caution in the ordinary man." Of course there are cases in which the court can say, as a matter of law, that under the peculiar facts of the case, the child did not act as one of his age and capacity should have acted, and consequently, was guilty of such contributory negligence as to preclude a recovery. This, however, is not such a case.

We have been referred by the learned counsel for defendants to a line of authorities of which Payne v. Chicago & Alton Railroad Company, 136 Mo. 562, is a type, in which it is claimed that the Court in Banc held that in the case of a boy about the plaintiff's age, with intelligence and knowledge of the danger connected with crossing railroad tracks, is chargeable with contributory negligence, just as an adult person would be. Judge SHERWOOD, who wrote the opinion in the Payne case, never contemplated a departure from the rule laid down in Burger v. Railway, supra. These cases merely decide that a child may so act, notwithstanding his youth, as to be guilty of contributory negligence, as a matter of law. But they do not decide that the child's age is not to be taken into consideration, even if he was at the time of the accident, a bright, intelligent and active child. These cases simply hold that, under the peculiar facts of the particular case, considering the child's age and intelligence, he did not act as one of his age and capacity might reasonably have been expected to act. We are of the opinion that under the facts in this case, the question whether plaintiff used such care as ought reasonably to be expected from one of his age and capacity was properly submitted to the jury by the instruction complained of.

The defendants challenge the correctness of plaintiff's sec-
ond instruction, which is as follows: "If the jury find from
the evidence that defendants, or either of them, on or about
December 7, 1895, negligently placed or maintained a pile of
cinders upon Ohio avenue in Kansas City, Kansas; that it was
unnecessary to have said cinders in such condition as you may
find them to have been; that such cinders constituted an ob-
struction to travel upon said street and did not leave the street
in a reasonably safe condition, and that plaintiff stepped upon
or against the same and was thereby thrown to the ground so
that passing cars ran over one of his legs, crushing and mang-
ling it, then plaintiff is entitled to a verdict against the defend-
ant or defendants which you find to have so placed and main-
tained the pile of cinders, provided you further find that there
was negligence in placing and maintaining such cinders, and
such negligence, if any, was the cause in producing the injury,
and that plaintiff was not on his part guilty of negligence which
directly contributed to his injury." It is insisted that the
question whether the cinder pile remained in the street an un-
reasonable length of time, was not submitted to the jury by this
instruction as it should have been.   This error was cured by
instruction numbered 15, given for defendants.   By this in-
struction, the jury were told in effect, that defendants had the
right to leave material in the street with which to construct or
repair its track, provided the same was used for the purpose of
repairing or surfacing the track within a reasonable time after
they were left in the street.   So when these two instructions are
considered and read together, the question whether defendants
unreasonably prolonged such use of the street, was fairly sub-
mitted to the jury.   It is not perceived how defendants could
possibly have been prejudiced thereby.   The rule is clear that
if any omission exists in plaintiff's instructions, and it is sup-
plied by those given for defendants, the error is cured.   [Owens

v. Ry. Co., 95 Mo. 169; Meadows v. Ins. Co., 129 Mo. 76.] As the omission in plaintiff's instruction was supplied by defendant's fifteenth instruction, there is no reversible error on that account.

The further objection is made that the jury were told that plaintiff could recover if this negligence "was the cause in producing the injury" in question. While the term "proximate cause" is the more common expression to be found in similar instructions, and is more accurate in phraseology, it is not perceived how the jury could have been misled by the language used.

It is also urged that the court below erred in giving plaintiff's third instruction defining negligence. This instruction is as follows: "Negligence is the want of ordinary care, and ordinary care is that degree of care which ought reasonably to be expected from a person of ordinary prudence in view of all the circumstances developed in evidence. If either defendant failed to exercise ordinary care in placing and maintaining said pile of cinders in question, then it was guilty of negligence." The specific criticism to this instruction is that instead of the words "in view of all of the circumstances," there should have been used "under like circumstances." We do not think there is any merit in this objection. There is no substantial difference in the two expressions. The same idea is expressed by the words in either case. The care which ought reasonably to be expected of a person under like circumstances, simply means, under the circumstances shown in evidence.

The plaintiff's instructions as a whole, when taken in connection with those given for defendants, fairly presented the law of the case to the jury, and when so considered, are in harmony with the controlling decisions of this court and furnish to defendant no just ground of complaint.

The defendant's instructions in the nature of a demurrer to all evidence, were properly refused.

The court's refusal to give defendants' instruction numbered 12, as follows, is next assigned as error:

"The court instructs the jury that if the pile of cinders over and upon which Otto Anderson says he fell at the time of this injury, was so high and open to view that it could easily be seen by one of his age and experience, approaching said pile while facing it, and that Otto Anderson was going in the direction of said pile until within about five steps thereof, and then turned around and went backwards and fell over said pile and rolled under the cars, your verdict must be for defendants."

This instruction is subject to the criticism that it is not predicated upon the facts of the case. There was no evidence that the plaintiff was going toward the cinder pile facing it, and then turned around and went toward it backward. He may have been going by, or at the side of the cinder pile, but there is not the slightest evidence that he faced it, and while facing it turned around to look away from it. The evidence shows that plaintiff was not aware of the presence of the cinder pile. Therefore, he had the right to assume that the cinder pile was not there. Again, it may be said that even though plaintiff knew of the existence of the cinder pile, it can not be said that he was guilty of negligence *per se,* in not seeing it. [Buesching v. St. Louis Gas Company, 73 Mo. 219; Barr v. Kansas City, 121 Mo. 22.] Moreover, this instruction requires of plaintiff the same care as an adult, instead of submitting to the jury the question whether in view of his age and capacity, he exercised the care that ought reasonably to be expected of one of like age and capacity. Besides, it was directly in conflict with defendant's thirteenth and seventeenth instructions, leaving it to the jury to say whether the plaintiff's age and capacity was such as to require of him the acts specified in the instruction.

Clearly, defendants could not complain that the court below adopted the theory invited by instructions given on its behalf. [Holmes v. Braidwood, 82 Mo. 610.] There was no error in refusing instructions numbered 11 and 16 asked for by defendants.

These instructions read as follows:

"11. The court instructs the jury that a railroad track is in itself a warning of danger, and it became Otto Anderson's duty when he approached the track in question to remain far enough away from the track while trains were approaching or passing to be safe from collision with the cars and from stumbling over obstructions which might cause him to fall, and if the jury believe from the evidence that Otto Anderson came near defendant's track while the train was approaching and stumbled over a pile of cinders which caused him to fall under the wheels when he either did see or might have seen the train coming by looking, or heard it by listening, and avoided the said pile of cinders by looking, your verdict must be for the defendants.

"16. If Otto Anderson was of such age and experience with reference to the movement of trains and cars as to know the dangers incident thereto, and if he went upon the track or near the cars for the purpose of getting upon the same, or passing in front or around the same while in motion, he was guilty of contributory negligence, and the plaintiff can not recover in this action, notwithstanding you may believe the defendants were guilty of negligence with reference to the speed of its train, the allowing of cinders to remain along its track, or in the running of its train without a watchman on the front car or in any other respect."

The observations made by us in disposing of defendant's refused instruction numbered 12, are equally applicable to and disposes of this point. Moreover, by defendant's instructions

numbered 8, 14 and 17, and plaintiff's fourth instruction, the jury were fully and specifically instructed upon the subject of contributory negligence.    Hence, there was no error in refusing these instructions.

Objection is also made to the remarks of Mr. Hagerman, counsel for plaintiff, in his closing argument to the jury, in which he, referring to the franchise granted to the defendants, said over defendants' objection.   "They were lawbreakers from the jump."   As all that counsel said in regard to the matter does not appear from the record, we can not say there was any abuse of discretion by the trial court.   There is certainly nothing in the brief reference to this subject in the record that would justify the reversal of a judgment otherwise properly obtained.

The defendants finally make the point that plaintiff, having brought suit on statutory or ordinance negligence, should not have been permitted to recover for common-law negligence, as the latter was a different cause of action, and if recovery was permissible for it, such could have been the case only on an amended petition.   Unfortunately for defendant's contention, the petition is not based upon the ordinance.   The averments in relation to the ordinance are merely cumulative.   Eliminate all reference to the ordinance, and enough remains to state a good cause of action of common-law negligence.   The petition, in part, reads as follows:   "At the side of and between the said tracks, and in said city, upon the said street, the defendants negligently placed, and on December the 7th, 1895, negligently maintained a pile of cinders and ashes, constituting an obstruction to the travel upon said street.   Said obstruction made the street unsafe for travel, and directly violated the terms of section 3 of ordinance 883 of this city."   The above allegations were followed immediately by the proper averments of the ordinance.   Manifestly, this paragraph of the petition states a good

cause of action of common-law negligence, independent of the ordinance. While the averment is made that such obstruction was prohibited by the ordinance of the city; still it will be observed that the unsafe condition of the street is the basis of the cause of action. In making out his case the plaintiff was not confined to the ordinance. The evidence tended to show that it was negligence in defendants to leave the cinders piled up in the street. Hence, it can not be said there was an entire failure of proof, neither was there a variance, but merely a failure to prove the cause of action in its entirety. Enough, however, was shown to sustain the action.

As was said in Werner v. Railroad, 81 Mo. 368, "it is not a case of variance, but an instance in which negligence of the character alleged is proven, but not to the extent alleged, but sufficient to support the action."

The case at bar is unlike, and clearly distinguishable from Hansberger v. Railroad, 43 Mo. 196; Holliday v. Jackson, 21 Mo. App. 660; City of Kansas v. Hart (Kan.), 57 Pac. Rep. 938; Railroad v. Wyler, 158 U. S. 285, cited by counsel for defendants.

The case seems to have been fairly tried and there being no error substantially affecting the merits, the judgment will be affirmed.

All concur.